WILCHER JONES, *et al.*, plaintiffs in error, *vs.* JOSEPH R. HOLLIDAY, defendant in error.

The granting of an injunction, and the appointment of a Receiver, is generally a question for the discretion of the Chancellor; but, if he abuse that discretion, his action will be controlled by this Court.

Equity.   Appointment of Receiver, by Judge VASON, Chambers, Baker county, January, 1868.

Holliday sold to Wilcher Jones and Gustavus Jones, his plantation in Baker county, and all the stock of horses, cattle, etc., the corn and fodder, and the crop then growing thereon, all of the value of $32,000 00, and made to them a deed for the land, which was to be absolute, if the payments agreed on were made promptly, but to be void if they were not promptly made.   The purchasers paid Holliday $4,000 00, in cash, for said personalty, and gave him their three several promissory notes; one for $11,000 00, and one for $3,000 00, each dated 18th August, 1866, and due the 1st of January, 1868, and the other for $4,000 00, of the same date, and due the 1st of March, 1867.   On the same day, the purchasers delivered to Holliday, as security for the two small notes, a mortgage on the said crop, (except one-fourth of it, which belonged to the laborers, and one-fifth of the cotton crop, which belonged to Holliday's overseer,) and upon the cattle, hogs, sheep, horses and mules bought by them.

When the first note was due, they had sold the crop of 1866, and so used the proceeds that they had to beg further time from Holliday. He extended the time for its payment till October, 1867, and, in consideration thereof, they gave Holliday a mortgage on the crop to be raised on said plantation in 1867, to secure this $4,000 00 note. This mortgage was in the usunl form, except that they contracted therein to deliver to Holliday, on or before the 1st of October, 1867, said crop, for his own use and behoof, if the note was not paid. In January, 1868, the note being yet unpaid, Holliday filed his bill, complaining that they had sold the cotton, and were selling the corn and fodder, raised on said place, instead of applying it to the payment of said note, and were, in like manner, selling some of the hogs, cattle, and mules; that they were insolvent, had paid him no more than the plantation was worth, for rent, since they got it, and were preparing to work said plantation, in 1868, without paying him. Holliday prayed for an injunction against their using or selling any of the crop of 1866 or 1867, and that a Receiver be appointed to take charge of the plantation, and hold it subject to the final decree of the Court, or that said sale be rescinded, etc.

Granting a temporary injunction, the Chancellor called upon the defendants to show cause why said injunction should not issue, and why a Receiver should not be appointed, as prayed for. For cause, they showed as follows: The purchase was not conditional, but absolute; the bill of sale for the personalty is absolute, and its consideration was the said two small notes. The deed for the plantation was made on the 13th August, 1866, the consideration, expressed in it, was said $11,000 00 note, and was in the usual form of a warranty deed, with this reservation: "Joseph R. Holliday, or his assigns, holder of said note, aforedescribed, doth retain and reserve a mortgage on said premises, to secure tne payment of said notes, given in the payment of the purchase money, as afore-described, together with all interest that may accrue thereon, as well as all costs and charges that may be sustained by the holders thereof, in

the event of default of payment thereof, which said sum of money, when paid, shall absolve said premises from the lien herein reserved." (Copies of the bill of sale and deed were attached to the answer.) When they bought the plantation, cotton was very high, and they felt that they could meet the note of 1867, because Holliday represented that the crop of cotton, then growing, would yield fifty bales, which they believed ; but, in fact, it yielded but twenty-eight bales, and when, out of this, the laborers and overseer were paid, they could not pay Holliday, because it took all of the balance to pay the expenses of 1866. The cotton crop of 1867, was one hundred and eleven bales. On the first of December, 1867, they delivered to Holliday's agent, eighty-eight bales of cotton, of 500 lbs. each, to be credited on said claims, with the understanding that Holliday would send it to Liverpool, and sell it by the 1st of March, 1868. This was supported by a letter from Holliday's agent, showing the shipment of the cotton ; but it also stated that another person had a claim on the cotton, and it would not " pay out," and asked for twenty more bales. They denied having sold any produce, as charged, except cotton ; said they had sold no stock but two colts, and had swapped an indifferent mare for a better mule. They denied their insolvency, though they claimed to have no other property than this plantation and stock, and a thousand or two dollars besides.

They said they had put some improvements on the place, but were willing to take back what they had paid, and cancel the trade ; but denied that they had been guilty of any wrong in the premises. On the other hand, they set up, by way of cross bill, that Holliday should pay them for the deficiency in the cotton crop, and in the hogs, etc., because they bought upon Holliday's representations, which were false. After this answer came in, Holliday amended his bill, by averring that said reservation in the deed, was an equitable mortgage, in his favor, and that they had kept it off the record only to defraud him, and to sell out to some innocent purchaser. This was denied, the answer stating that the failure to record was merely negligence, and that they had no

idea of selling the plantation and stock, and that the mortgage in the deed was a common law mortgage. But one of the defendants was served, and the answer was verified by him only.

At the hearing, after the bill and answer were read, complainant testified that it was understood by the parties, at the time, that the deed was a mortgage on the premises; that he had called on defendant, several times, for a copy of it, and defendant promised to furnish it, but did not, and had never had the deed recorded. He denied making any representations when he sold the property; admitted the receipt of $4000 00, in cash, at that time, and eighty bales of cotton in the fall of 1867. The defendant testifies, in his own behalf, reiterating the allegations in his answer, with no *addenda*, except that he and his brother examined the farm before buying, but had never seen cotton growing before, and relied wholly on Holliday's representations, and that he had sold, from the place, a sugar mill, on credit to a solvent man, which was useless to him. (It was after this examination of the parties, that said amended bill and answer came in.)

After argument, had the Court suggested that, if Jones would give Holliday a mortgage on half of the crop of 1868, Jones should keep the property. Jones declined making the mortgage. The Court, thereupon, ordered that, unless Jones would accede to that proposition in five days, the defendant should give bond, in the sum of $3,000 00, with good security, " conditioned for the payment of the rent of said plantation for the present year, (1868,) and for each year that it may be so used by said defendants during this litigation, the amount of which shall be settled or hereafter adjudged in this Court, and that failing to do so within ten days from this date, John M. Cutliff is appointed Receiver, who is required to take possession of said plantation, and take steps to rent the same, which said sum shall be held subject to the further order of this Court, as a surety or fund for the payment of said mortgage debt." The Court further enjoined the defendants " from removing from the said county any of the property on said farm subject to said mortgage, or of dispos-

ing of the same, but that they hold the same subject to the condition of said mortgage, and as a surety for said mortgage debt." If the proposition should be accepted, the Receiver should not act; if the bond were given the injunction should be vacated.

This action of the Court is complained of by Jones.

WRIGHT & WARREN, HINES & HOBBS, for plaintiff in error.

STROZIER & SMITH for defendants in error.

WALKER, J.

Where the Chancellor abuses his discretion in the granting of an injunction, or the appointment of a Receiver, his action will be controlled. This was not a proper case for the appointment of a Receiver under the facts. The Messrs. Jones purchased the property of Holliday, paid $4,000 cash, and 88 bales of cotton, and were proceeding to make another crop. Holliday held a lien upon all the property sold, and all the evidence of any waste of the property, was the sale of a sugar mill on a credit to a solvent purchaser, two piney woods colts, which were of no use to the Jones', and the exchange of an indifferent mare for a mule of greater value; and then they had made valuable improvements on the plantation. Upon this state of facts, the Court proposed to make a contract for the parties; that is, if the Messrs. Jones would give a lien on the crop which they were then preparing to plant, they could retain the possession of their property, otherwise not. The Receiver was really appointed, it would seem, not because the Messrs. Jones were wasting the mortgaged property, but because they declined to mortgage their future crop. A sufficient reply is, they never contracted to do so. The vendor had his remedy to compel the payment of the money due him. He had a mortgage on all he sold; substantially, the property was all within reach of the process of the Court; $4,000 and 88 bags of cotton had been paid, and notwithstanding all this, the Court ordered the property out of the

possession of the purchasers, into the hands of a Receiver. This ought not, under these facts, to have been done. Of course, if the purchasers were wasting the property, and removing it out of the reach of the mortgagee, so as to defeat the collection of the money due him for it, equity could interfere to stay the threatened wrong; but no such necessity appears. The purchasers were using the property to the best of their ability, and were paying as fast as they could. They were entitled so to use it; if they cannot pay as fast as their obligations fall due, the Common Law affords ample remedy by which the vendor can coerce them.

Judgment reversed.